FAGAN IRON WORKS, complainant,

*v.*

CALUMET CONSTRUCTION COMPANY, defendant.

[Submitted July 7th, 1913.   Decided November 17th, 1913.]

The only asset of an insolvent corporation was a chose in action then in litigation; assignments of portions of this claim had been made to several creditors at different times. The claim was settled by authority of the court of chancery for an amount insufficient to pay the receiver's costs, allowances and fees, and the full amount due the assignees.— *Held,* that the costs, allowances and fees should be charged against each assignee in proportion to the amount of his claim and that the balance should be paid to the assignees in the order of priority.

On appeal of Gilbert Collins and others.

*Mr. Charles B. Bradley,* for the appellants.

*Messrs. Roberson & Demarest,* for Colonial Bank, respondent.

The opinion of the court was delivered by

SWAYZE, J.

This appeal presents a novel question. A receiver of the Calumet Construction Company was appointed in insolvency proceedings. The only assets seem to have been a claim against the board of education of Hoboken which had been reduced to a judgment, subsequently set aside by the judgment of this court. Assignments of partial interests in this judgment and, in some cases, of the cause of action on which it was founded, had been made to six different creditors, whose order of priority is not questioned. The bill for a receiver was filed after reversal of the judgment and disclosed no other assets than the claim in suit. The chancellor required some sort of a bond to the receiver, per-

haps to secure him for the necessary expenses of further litiga-
tion, although the case fails to disclose the fact. Upon failure to
give this bond, the receiver advertised the claim for sale to the
highest bidder. The only bid was $2,000, which was rejected.
Thereupon the board of education offered $12,750 by way of set-
tlement and this was accepted. In distributing this fund, the
court ordered that $1,000 be withheld for receiver's fees, $250 to
cover complainant's counsel fee and costs, and that the $1,250
and the receiver's disbursements be retained by him and the
balance distributed among the assignees in the order of priority.
The effect of this order was to deprive the appellants whose as-
signment was last in order of priority of any share in the fund.
They now claim that the receiver's fees, allowances and costs
should be charged upon all the assignees in proportion to the
amount of their several claims. We think that under the circum-
stances of this case their claim should be sustained. All the
assignees were interested in a single cause of action and in re-
covering as much as possible from the board of education. Any
action upon the claim must be for the use and benefit of all.
They were interested not only in prosecuting the claim success-
fully, but in harmonious co-operation in the litigation, and
especially in harmonious action to secure a favorable settle-
ment. The failure of the assignees last in order of priority to
co-operate, and still more their active opposition to a settlement
which would pay the other assignees in full and leave them
nothing, made it to the interest of all that any settlement should
be upon such terms as would enure to the common benefit. We
can hardly doubt that if Collins & Corbin (the last in order of
priority) had opposed the settlement that was made, the Vander-
bilt executors (the first in order of priority) would have been
willing to make an equitable arrangement by which the greater
part of their money would be secured out of the wreck rather
than subject themselves to the hazard and expense of further
litigation, an expense which might fall upon them alone in case
the other assignees abandoned hope of realizing anything for
themselves, as well they might in view of the small bid made at
the public sale. No such arrangement was made, but all parties

were in a court of equity and might rightly assume that the court in distributing the fund would distribute it upon equitable principles. No more equitable principle can be suggested than an arrangement which sensible men actuated by a desire to recover as much as possible would have willingly entered into. In a case of a common interest in a single chose in action the validity, or at least the amount of which was contested, we think sensible assignees actuated by a spirit of fairness would have agreed to an assessment of the necessary expenses *pro rata.* The case differs from the ordinary one where there are legal liens that are distinct and unquestioned and need only to be enforced. It more nearly resembles the case of several different funds administered by the same receiver. "Where there are several funds, and the receivership is as necessary for the conservation of the one as of the other, they should bear the expense in proportion to the benefit received by them, and in the absence of facts justifying such course, it is error to charge the whole of the expense on one fund." *34 Cyc. 369.* The very existence of the debt that had been assigned was here in question. Even if some amount was conceded by the defendants, they might well have availed themselves of the situation to prevent a recovery. To secure a settlement it was necessary for the assignees to show a readiness to enforce their rights. They were in the same boat and likely to suffer alike from its wreck. The metaphor suggests an analogous case, somewhat remote, indeed, and in a very different branch of the law, but, nevertheless, illuminating, in the absence of any precedent precisely in point. That is the case of general average in maritime law. General average is a contribution by the several interests engaged in a maritime adventure to make good the loss of one of them for voluntary sacrifices of part of the ship or cargo to save the residue of the property and the lives of those on board from an impending peril, or for extraordinary expenses necessarily incurred for the common benefit and safety of all the interests in the adventure. *36 Cyc. 372.* Three conditions are necessary—*first,* that the ship and cargo should be placed in a common imminent peril; *second,* that there should be a voluntary sacrifice of property to avert that peril; *third,* that by that

sacrifice the safety of the other property should be presently and successfully attained. *Columbian Insurance Co.* v. *Ashby, 13 Pet. 331, 338* In maritime law the principle has the sanction of ages so that every shipowner and every shipper contracts with reference thereto, but its original basis must either have been that of natural justice or implied contract; and that is, as Lord Bowen said, largely a matter of words. *Burton* v. *English, 12 Q. B. D. 218, 223.* The rule became law because it was a rule by virtue of which in the long run all engaged in a common adventure profit. Although it has never been applied to the particular case before us, the law grows by means of sound analogies, and we are not deterred by its novelty from adopting a rule for the benefit of all, which has for centuries been applied with satisfaction to a different condition of affairs.

In the present case, Collins & Corbin assented to, or at least did not oppose a settlement of the claim at a figure that would leave nothing for them if the costs, allowances and disbursements were to be first paid. There was imminent peril of loss, and by their sacrifice the safety of the other claims was presently and successfully attained. The sacrifice was by the receiver acting under the authority of the court, which authorized a settlement for a sum insufficient to pay the receiver's allowances and costs and satisfy all the claims. The receiver was acting for all concerned, and Collins & Corbin had the right to expect from the equity of the court as favorable treatment as they could undoubtedly have secured by private contract. It can make no difference whether we say that they are entitled to contribution from the other assignees in analogy to the general average of the maritime law, or whether we say that where a court of equity authorizes a settlement that shuts out an interested party to the benefit of others, it will imply a contract on their part to contribute to the expenses or whether we rest the claim to contribution upon the substantial justice of those who receive the benefit contributing to the burden.

Another analogy perhaps as close is the liability of a tenant in common to contribution for expenditures absolutely necessary for the benefit and preservation of the common property (*38 Cyc.*

*54*), a right that has been sustained where costs have been incurred in a necessary and proper suit for the benefit of the common property. *McClintock* v. *Fontaine, 119 Fed. Rep. 448.*

The order of distribution must be reversed and the record remitted, to the end that an order be made directing that the costs, allowances and fees be charged against each assignee in proportion to the amount of his claim, and that the balance be paid to the assignees in the order of priority.

*For affirmance*—PARKER, VOORHEES, MINTURN, WHITE—4.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, KALISCH, VREDENBURGH, CONGDON, TERHUNE, HEPPENHEIMER—10.