Wood et al., Admrs., *v.* Wood, Appellant.

Argued April 17, 1933.   Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, DREW and LINN, JJ.

*Walter Lee Sheppard,* for appellant.

*R. T. McCracken,* of *Montgomery & McCracken,* with him *Acker, Manning & Brown,* for appellees.

OPINION BY MR. JUSTICE LINN, June 30, 1933:

For many years Walter Wood, who is appellant, and his brother Stuart Wood, who died March 2, 1914, were partners. Their business was to act as "financial and selling agents for the Camden Iron Works and the Florence Iron Works......[corporations then]......engaged in the manufacture of iron pipe and like material and of machinery." The firm held shares of stock and bonds of those corporations. It was a partnership at will (Wood v. Todd, 251 Fed. 530) and therefore was dissolved March 2, 1914, by the death of a partner. As survivor, Walter Wood was entitled to wind up. While he was so engaged, in October, 1914, the court below, on bill filed by the appellees, as executors of the deceased partner, appointed receivers (Walter Wood being one of them) to liquidate the partnership. Various accounts by the receivers were filed and audited. As all debts have been paid, no rights of creditors are involved. Numerous exceptions to the auditors' reports were heard and disposed of by the learned court below to the satisfaction of the parties, except as to two points, now here for review: 1, the distribution of the assets between appellant and the deceased partner's personal representa-

tives; and, 2, payment of the receivership expenses. No facts are in controversy. The accuracy of the figures is conceded. Only the plan of distribution is disputed.

The partners had agreed to share profits and losses as follows: Walter Wood $^{42}\!/_{65}$ths, and Stuart Wood $^{23}\!/_{65}$ths; their contributions to capital were, however, in different ratio; the present dispute is doubtless attributable to the fact that their contract gave appellant nearly twice as large a share of profits as his partner received, though the partner had contributed nearly twice as much of the capital as appellant had contributed. The liquidation records show that, to the date of dissolution, capital contribution had been made as follows:

| | |
|---|---:|
| By Walter Wood | $409,813.31 |
| By Stuart Wood | 726,014.16 |
| | |
| Total capital | $1,135,827.47 |
| After paying creditors and liquidation expenses, there remained for distribution to capital contributions, only the sum of | 927,326.64 |
| | |
| Showing loss, or impairment of capital of | $208,500.83 |
| By their agreement that loss was chargeable: | |
| to Walter Wood $^{42}\!/_{65}$ths | 134,723.61 |
| to estate of Stuart Wood $^{23}\!/_{65}$ths | 73,777.22 |
| | |
| | $208,500.83 |
| With the result, that the capital value of Walter Wood's share at dissolution was (his original capital contribution, less the loss he had agreed to stand) or | 275,089.70 |
| And the capital value of decedent's share, reduced by $^{23}\!/_{65}$ths of the loss, was | 652,236.94 |
| | |
| | $927,326.64 |

Those sums represent the capital value of the respective contributions of the partners as of March 2, 1914, worked out in the winding up, even though it was impossible on that date immediately to ascertain the amounts. From and after that date, partnership trade

was ended; such business as was done, first, by the liquidating partner, and then, by the receivers, was merely for the purpose of winding up the firm affairs.*

During the period of liquidation, income was received in the sum of $563,079.27 which, both sides agree, "represents merely the interest on bonds and dividends on stock owned by the partnership at the time of dissolution." † It was not a "profit" produced by partnership trade, for that had ceased. It was income earned or produced after dissolution, by the capital contributions of the partners (reduced as shown above in accord with their agreement) and was therefore necessarily to be awarded to each in proportion to his capital interest, that is, to

Walter Wood $\dfrac{\$275,089.70}{\$927,326.64}$ ..................... $167,036.40

and to decedent's representatives $\dfrac{\$652,236.94}{\$927,326.64}$ ... 396,042.87

$563,079.27

On this appeal, Walter Wood complains of this distribution of capital and of income, contending that the net income received during the period of liquidation is partnership profit of which he is entitled to $^{42}\!/_{65}$ths, instead

---

\* "......an account of partnership dealings and transactions, although in one sense it stops at the date at which the partnership is dissolved, must still be kept open for the purpose of debiting and crediting the proper parties with the moneys payable by or to them in respect of fresh transactions incidental to winding up, as well as in respect of old transactions engaged in prior to the dissolution": Lindley, Partnership, 9th edition 632.

† On this subject, appellant's brief states: "Here, the income in question was earned on the unconverted partnership assets, standing unchanged from the date of dissolution. Such assets as were converted, were never reinvested. The income in question was earned by the original partnership assets themselves, to a large extent before the partnership debts were paid, and was not earned from the amount received from their liquidation."

of such part only as is attributable to his proportion of the firm contribution then in liquidation. To illustrate his contention, he states an account, by selecting figures from the schedule of distribution approved below, as showing "Net profits since dissolution" of $354,578.54, and a net capital gain of $60,112.75. To illustrate his position, his account is quoted from his brief in a note.*

In stating that account, appellant makes the date of final distribution the decisive date of ascertaining the value of his capital interest, instead of the date of dissolution which was adopted by the learned court below and for which appellees contend. This appeal depends on which is correct.

We all agree that the decisive date for the purposes in question is the date of dissolution. On that date, March 2, 1914, the relative rights of the partners became fixed, and each partner, or his representative, became entitled to take out his share of the capital, creditors having been paid. If it could not then be delivered because the amount required ascertainment by winding up, he was

---

\* Corpus, liquidation value ...................... $1,195,940.25

| | | |
|---|---|---|
| Gross earnings since dissolution .... | $726,183.35 | |
| Expenses since dissolution .......... | 431,717.69 | |
| Net earnings since dissolution ...... | | 294,465.66 |

Total corpus and profits ................... $1,490,405.91

Contributions to capital by partners:

| | | |
|---|---|---|
| Walter Wood .................... | $409,813.31 | |
| Stuart Wood .................... | 726,014.16 | |
| Total contributions .......... | | 1,135,827.47 |

Net profits since dissolution .............. $354,578.54

"It will be noted that the corpus of the partnership assets liquidated at a value substantially in excess of the total contributions to capital of the partners.

"The corpus liquidation value was ............... $1,195,940.25

"The total contributions to capital were .......... 1,135,827.47

"The net capital gain was ................. $60,112.78"

nevertheless to be treated from that time as owner of it, and, therefore, entitled to receive what it earned from that time until paid or delivered to him. On that date, each partner became a creditor of the capital in the then net value of his contribution. From that date, in a partnership engaged as this one was, his contribution ceased to earn "profits" for the partnership, because the contract provided for the sharing of profits only during the existence of the partnership and not after its dissolution; the contract governs the distribution.* On the other hand, the result contended for by appellant is not in accord with the contract, but in violation of it. On appellant's theory, joint trade for partnership purposes would be continued after dissolution, and the value of the retiring partner's contribution chargeable to capital assets, would depend on contingencies not within the articles of partnership. In fact, in this case joint or partnership trade did not continue. Accordingly, from the date of dissolution each partner is entitled to receive, in addition to his original contribution, or what remains of it, the net earnings made by or attributable to it. As the learned president judge of the court below said: "Indeed it would not be fair that an agreement made between partners to divide profits and losses in certain proportions should apply to the conditions existing after dissolution. New business contracts cannot then be entered into nor enterprise exerted in aggressive search of gain; the assets are merely items of property and lack the dynamic quality of profit-producing cap-

---

* "The decree for the dissolution of the partnership put an end to the joint trade between the parties. From the date of that decree it is incorrect to say that the partnership was continuing, although the trade was, in a certain sense, being carried on; that is, for the purpose of realizing the property and effects, and winding up the partnership concern. No doubt profits might have resulted, and apparently did result, from the sale of the partnership stock and property, but they cannot be regarded as the 'gains and profits of the joint trade' in the terms of the articles of partnership": Watney v. Wells, L. R. 2 Ch. App. 250.

ital employed for business purposes." See Hay's App., 91 Pa. 265, 270; Plumly's App., 1 Mona. 177, 181; Brenner v. Carter, 203 Pa. 75, 79, 52 A. 179; Adams v. Hubbard, 221 Pa. 511, 517, 70 A. 835; Froess v. Froess, 284 Pa. 369, 131 A. 276. Also, see Watney v. Wells, L. R. 2 Ch. App. 249, 252, for the proceedings in that case before the Master of the Rolls, see 30 Beav. 56, 54 Eng. Reprint 810.

No one will deny appellant's contention (supported by numerous cases cited in the brief) that for purposes of winding up, the partnership continues with title in the liquidating partner (and here in the receivers who succeeded him) until final distribution, but the partnership authority of the liquidating partner (or the receivers) is restricted by the necessities of liquidation. See cases cited in Froess v. Froess, supra; section 41, Partnership Act, 1915, P. L. 18; 59 PS, section 103.

The second point made by appellant is that the expenses of the receivership during liquidation should all have been charged against the income received during that period. The learned court below was of opinion that the expense had been incurred "in order to salvage not only the net capital which existed at the time of dissolution but also the income which accrued during liquidation," and apportioned it between capital and income. Property placed in the custody of receivers is charged with the necessary expenses incurred in caring for and administering it (Bauer v. Wilkes-Barre Light Co., 274 Pa. 165, 169, 117 A. 920) and, while generally income is first chargeable with expenses, the general rule is subject to equitable considerations. This was a liquidating receivership. The proceeding is in equity. The value of the contributions at dissolution was enhanced, or the capital loss was minimized, during the long period occupied in liquidation. The receivers were the appointees and agents of the court, not of the parties. No abuse of discretion, in so dividing and charging the liquidation expenses, in the circumstances disclosed, has

been shown. (Compare New York Dock Co. v. S. S. Poznan, 274 U. S. 117, 120 et seq.; Fagan Iron Works v. Calumet Const. Co., 82 N. J. Eq. 345, 88 A. 1069.)
Decree affirmed.