Phillippi et al., *v.* Beckman, Secretary of Banking, Appellant.

Argued March 17, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

J. *Andrew Frantz,* with him *M. Biddle Saul, Horace M. Barba,* Special Deputy Attorney General, and *Claude T. Reno,* Attorney General, for appellant.

M. M. *Harnish,* with him *Wm. B. Arnold,* for appellees.

OPINION BY STADTFELD, J., April 12, 1939:

This was a case stated in the court below in the nature of a special verdict. The facts are not in dispute. The issue is clearly stated in the opinion by SCHAEFFER, J., from which we quote as follows: "In the liquidation of the Agricultural Trust and Savings Company, of Lancaster, Pa., beginning January 7, 1932, the Secretary of Banking of the Commonwealth of Pennsylvania, as receiver, administered and liquidated a portion of Mortgage Pool Series "A" and filed three accounts before the remaining assets in said pool were taken over by John E. Phillippi, Substituted Fiduciary thereof, on December 22, 1933.

"The Receiver took credit for a commission of 5% on the income in all accounts filed by him in said Mortgage Pool totaling $1504.06. The Mortgage Pool contained mortgages aggregating about $377,000, of which $232,-000 was held by participants generally; about $129,000 was held by the Trust Department of said trust company; and about $16,000 was held by the Commercial Department of said trust company. The participation trust certificates issued to outsiders provided for an interest rate of 5% 'without any deductions for taxes, expenses or losses incurred in the management of the Fund, the Company hereby guaranteeing payment of the principal and interest in full.' All the mortgages in the Mortgage Pool bore interest at 6% ...... Exceptions were filed in each account to the credit items for commissions on income ...... As set forth in the case

stated: '(19) It is agreed that the said "Mortgage Pool, Series A," is insolvent and that the participation certificate holders therein will not be paid in full, even if the said monies claimed herein, to wit, $1504.06, are ordered by the Court to be paid to John E. Phillippi, Substituted Fiduciary, and distributed by him with other assets in said Pool. (20) The Secretary of Banking, defendant in this action, has retained, and still has in his possession the said sum of $1504.06.' In paragraph 17 it is stated: 'The said "commissions" taken by the Secretary of Banking as aforesaid were taken by him for the benefit of the Commercial Department of said Agricultural Trust and Savings Company of Lancaster, Pa., and if ultimately retained by him, will be added to the assets in the Commercial Department of said closed Bank for the purpose of distribution.'

"The issue as submitted is whether the Secretary of Banking of the Commonwealth of Pennsylvania as statutory Receiver of the Agricultural Trust and Savings Company, of Lancaster, Pa., is entitled to a 5% commission on the income of the Mortgage Pool and, if so, whether it shall be chargeable against the income of the Mortgage Pool or against the Commercial Department of said trust company." The reasonableness of the charges is admitted.

The court below disallowed the credit item of $1504.06 for commissions on the income of the mortgage pool in question and held that the said sum is an asset of said Mortgage Pool Series "A," and entered judgment in favor of the plaintiff, John E. Phillippi, Substituted Fiduciary and against the defendant, Secretary of Banking. This judgment must be reversed.

Although the Banking Act of 1923 did not specifically provide for compensation and expenses to the Secretary of Banking in possession of a mortgage pool of a closed bank, or for compensation due the Secretary for his administration of trust estates in any fiduciary capacity, nevertheless Section 40 of the Banking Act of 1923,

P. L. 809 (7 PS 40), provides that when the Secretary of Banking takes possession of the business and property of any closed bank, he shall also take possession of all funds, property and investments held by it in any fiduciary capacity, but shall keep the same separate and apart from the assets thereof. Section 49 of the same Act then makes provision for the payment of all expenses of liquidation by expressly stating that the same shall *first be payable* out of the funds of such closed bank. It would therefore seem that the Act of 1923 anticipated the liquidation of mortgage pools of a closed bank by the Secretary of Banking. The provision in Section 49 of the Act that such liquidation expenses should "first be payable out of the funds of such corporation" would seem to presuppose the fact that the commercial department of the closed bank was later to be reimbursed from those funds which were especially benefited by the services as performed by the Secretary of Banking who administered or liquidated in any fiduciary capacity such funds as a mortgage pool. The expenses of the receivership of such a fund would seem to be properly a charge only on the particular fund benefited by said administration, including the allowance to the receiver of compensation for his services.

Section 808 of the Act of 1933, P. L. 565 (71 PS 733-808) provides that "The secretary in possession of an institution as receiver ...... shall also be entitled to reasonable fees and commissions, both as to income and as to principal, for any services performed, and all reasonable expenses incurred, by him on behalf of any estate of which the institution was fiduciary ...... All sums received by the secretary under this section shall become assets of the institution of which he is in possession as receiver ...... The court in which the secretary shall file the account for the estate of which the institution was fiduciary shall award to the secre-

tary the fees, commissions, and expenses provided for in this section."

· Section 906 of the same Act, in connection with the secretary in possession of a mortgage pool, provides that "The court, in its adjudication of any account filed by the secretary as to any mortgage or securities pool operated by an institution of which the secretary is in possession as receiver, ...... shall award to the secretary such compensation for services rendered and expenses properly incurred ...... by the secretary, as the court shall deem reasonable and proper under all the circumstances. The order of the court making any such award to the secretary shall provide for the payment of such compensation or expenses *out of any cash included in the account* ...... All sums received by the secretary under this section shall become assets of the institution of which he is in possession as receiver." (Italics supplied).

While this act of the General Assembly does not rule this case, it sheds light here, as in other cases, on the fairness and reasonableness of the claim for compensation and may be considered in passing on the equity of its allowance. See *Estate of Jesse Millman, Deceased,* 111 Pa. Superior Ct. 519, 170 A. 451.

Under Section 802 of the Act of 1933, P. L. 565 (71 PS 733-802), the secretary in possession of an institution as receiver has all the rights, powers and duties which such institution had in its fiduciary capacity.

According to the ordinary rules of receivership, it is quite universally settled that the expenses of a receivership properly created are a charge on the fund administered: 16 Fletcher on Corporations, Sec. 7914; 21 Columbia Law Review 467. On the appointment of a receiver, *the property placed in his care becomes charged* with the necessary expenses incurred in taking care of it and saving it, including the allowance to the receiver for his services: *Bauer v. Wilkes-Barre Light Co.,* 274 Pa. 165, 169, 117 A. 920; *Wood v. Wood,*

312 Pa. 374, 167 A. 600. Where it is the duty of a receiver to convert and distribute a fund as quickly as expedient and he collects assets and converts them accordingly, he will be allowed at the time of settling his account, commissions *from the fund with which he has dealt: Bosler's Estate,* 161 Pa. 457, 29 A. 57.

The Secretary of Banking as receiver, insofar as his services rendered in liquidation are concerned, is not bound by any prior agreement of the bank, limiting or waiving his compensation. By Section 29 of the Banking Act of 1923, supra, the Secretary of Banking, as receiver for a closed bank, has all the rights and powers of a receiver appointed by any court of equity. It would seem that an agreement, if any such existed either express or implied, between the bank prior to its insolvency and closing and the participants in this mortgage pool, which limited in any manner the expenses or losses incurred in the management of the pools, would or could in no way bind the Secretary of Banking, subsequently appointed under the Banking Act of 1923, insofar as his right to commissions is concerned.

The receiver is not bound by the provisions of the agreement between the Trust Company and the participating mortgage certificate holders to the effect that the commercial department of the Trust Company should bear all losses or expenses in the mortgage pools. The holders of the mortgage pool certificates can enforce the guarantee of the payment of principal and interest of their funds from the commercial department of the Trust Company under the written agreement referred to in case of deficiency upon the final liquidation of said mortgage pools. After payment in full of the depositors of the Trust Company, they would be entitled to share pari passu with other general creditors. The guarantee referred to applied at most only to the bank when operating as a going concern, and could have in no manner bound a subsequently appointed receiver.

When the secretary is asking for compensation, he is merely asking for reimbursment to the commercial department of the bank for all prior expenses of liquidation of this mortgage pool which were advanced by the commercial department in the first instance from the date of the closing of the bank on January 7, 1932, until the date of the appointment of the substituted fiduciary on December 22, 1933. If compensation to the secretary is disallowed, as was done by the court below, then the depositors of the commercial department are bearing the entire cost of the liquidation of this mortgage pool, in spite of the fact that the mortgage pool obtained all the benefits from such services rendered and expenses incurred. According to the facts as agreed upon the mortgage pool was benefited during this period by distributions of income and principal totaling $108,780.69.

Applying the principle set forth in the cases cited, we are of the opinion that the mortgage pool should bear the costs of its own liquidation in the first instance.

The assignment of error is sustained, judgment reversed and judgment now entered in favor of defendant and against plaintiff, in the sum of $1504.06.