## Vollet, Appellant, *v.* Pechenik.

Argued November 18, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Daniel K. Medill,* with him *Fluhrer, Medill & Shelley,* for appellant.

*Walter Schachtel,* with him *Einhorn & Schachtel* and *Markowitz, Liverant, Boyle, Rahauser & Kagen,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, January 6, 1955:

This appeal arises from an action in equity instituted by the plaintiff Henry B. Vollet for an accounting from his partners, Charles I. Pechenik and Philip J. Rojahn, the principal issue being the amount to which the plaintiff was entitled on the gain acquired through the sale of the partnership's buildings, plant and machinery.

In order to dispose of the issues involved in the appeal it is necessary to quote certain paragraphs from the written partnership agreement entered into between the parties on February 15, 1950.

"SIXTH: . . . The interest, equity and ownership of the said Charles Pechenik in this partnership is eighty per cent (80%) and of Henry Vollet is twenty per cent (20%) . . ."

"SEVENTH: Henry Vollet shall be the General Manager and as such shall receive during the term of this agreement, a fixed annual salary of $15,000.00 and Charles Pechenik shall receive a fixed annual salary of $10,000.00. Both shall be reimbursed for expenses incurred by them in connection with their services for the benefit of the business. *Henry Vollet, in addition to his said salary of $15,000.00, shall be paid within thirty days after the close of each calendar year, 20% of the annual net profits of the partnership calculated annually after the deduction of his said base salary of $15,000 and the $10,000.00 annual salary of Charles*

Pechenik. Philip J. Rojahn shall receive no wages or compensation." (Emphasis supplied)

In the event of liquidation of the partnership, the net worth of the assets were to be distributed according to: "ELEVENTH: . . . In the event of liquidation, the net worth of this partnership shall be distributable to the parties hereto on the basis of their respective capital accounts."

On November 2, 1951, the partnership agreed to sell its assets—plant, machinery and equipment—to Irving Schneider for $175,000, the closing of the sale to take place on January 15, 1952. In order that Schneider might enter the plant while the partnership was winding up its affairs, Schneider was given a lease for the period from November 2, 1951 to January 15, 1952. The lease stated specifically that the partnership would use the plant facilities for the purposes of *"completing* its manufacturing processes and *winding up* its affairs during the term" of the lease. (Emphasis supplied.)

On January 15, 1952, final settlement under the agreement of sale and lease was consummated. The partnership realized a capital gain of $50,150.95 on the bulk liquidation of the plant, machinery and equipment. The plaintiff contends that before there may be any distribution of gain on the basis of "the respective capital accounts" in accordance with paragraph eleventh of the partnership agreement, he is entitled, under paragraph seventh of the partnership agreement, to 20% of the profit acquired on the sale. Stated succinctly, the issue to be decided is: Does the seventh paragraph of the agreement providing for payment to plaintiff, "in addition to his said salary of $15,000" of "20% of the annual net profits of the partnership calculated annually after the deduction of his said *base* salary of $15,000" apply to profits made on the

liquidation of the partnership assets? We do not believe that it does.

A review of the record and of the agreement of sale makes it quite clear that when the partnership, on November 2, 1951, sold all its assets and began liquidating its inventory without intention to further engage in partnership business, a dissolution of the partnership followed. The record clearly substantiates a finding that the parties actually *intended* to effect such a dissolution. In *Haeberly's Appeal,* 191 Pa. 239, the fact situation was similar to the one in the case at bar: "The auditor found that the term of the partnership under its articles had not expired, there had been no formal dissolution or settlement of accounts, there were still some undistributed assets, and one unpaid debt, a mortgage on real estate belonging to the partnership, though held in the name of an individual partner, yet, notwithstanding these circumstances, he found as a fact that the firm had sold its entire plant, equipment and good-will, and by common consent ended its business. This finding was confirmed by the court, and we see no reason to question its soundness. The auditor's conclusion that the case is 'analogous to that of a partnership which has dissolved by mutual consent, settled its accounts, paid its debts, and has a surplus in land,' is the logical deduction from the facts. *Dissolution, as between the partners, is a matter of intention, and it may be shown by the sale of the whole property and business, as well as in other ways*: 17 Am. & Eng. Ency. of Law, 1100." (Emphasis supplied). (P. 247)

What we said in the case of *Wood v. Wood,* 312 Pa. 374, 377, is quite pertinent to the facts in this case. "During the period of liquidation, income was received in the sum of $563,079.27 which, both sides agree, 'represents merely the interest on bonds and dividends on

stock owned by the partnership at the time of the dissolution.' *It was not a 'profit' produced by partner-trade, for that had ceased. It was income earned or produced after dissolution, by the capital contributions of the partners . . . and was therefore necessarily to be awarded to each in proportion to his capital interest . . ."* (Emphasis supplied)

It will be noted that the earnings in the *Wood* case were *income* from capital assets. The instant case is a stronger one in that the capital gain involved is one realized in the very liquidation of the partnership assets and thus clearly cannot be regarded as "profits" produced by partnership trade. That Paragraph Seventh would be inapplicable to such a gain is further demonstrable from the *Wood* case, where we said, at page 379: "As the learned president judge of the court below said: 'Indeed it would not be fair that an agreement made between partners to divide profits and losses in certain proportions should apply to the conditions existing after dissolution. New business contracts cannot then be entered into nor enterprise exerted in aggressive search of gain; the assets are merely items of property and lack the dynamic quality of profit-producing capital employed for business purposes.' "

We find nothing in the partnership agreement that would suggest that anything contrary to the above-quoted rules was intended.

Even if we were not to consider the testimony of the defendant Pechenik to the effect that the 20% profit-sharing provision was inserted as an incentive to the plaintiff so that he "would have something to work for," an analysis of the language of Paragraph Seventh clearly reveals that the 20% share of the profits was to be considered part of the plaintiff's compensation as general manager, since it was to be paid "in

addition to his said salary of $15,000," which was only the *"Base* salary". In fact, the plaintiff himself in his brief refers to his share of the profit as a "bonus." Furthermore, Vollet was to receive 20% of the "annual" net profits of the partnership calculated "annually". The language of this seventh paragraph thus reveals that *operating* profits were intended—that is, recurring profits arising out of the operation of the business for the purposes for which the partnership was formed.

The *alternative* argument advanced by plaintiff is that he is entitled to receive 20% of the depreciation charged on the physical assets thus sold at a profit. It is his contention that "During the operation of the partnership business depreciation was regularly taken on the buildings, plant and machinery. This depreciation as it was taken reduced the net operating profits of the partnership in each instance and consequently proportionately reduced the amount of 'bonus' received by the Plaintiff from such net profits. As this depreciation was taken, it was applied against and reduced the initial cost of such buildings, plant and machinery. Therefore, when the buildings, plant and machinery were sold, the net profit reflected to the partnership included such depreciation. In other words, $23,712.72 of the net profit of $49,029.22 to the partnership from such sale consisted of the profits received from the operation of the partnership business during the life of the partnership, which were taken as depreciation on the buildings, plant and machinery. Therefore, the higher the depreciation rate used, the less, under the Trial Court's reasoning, the Plaintiff would receive on his 20% 'bonus' arrangement, in that the Trial Court denied plaintiff recovery of the profits set aside as depreciation when they were reflected as net profit to the partnership on the sale

of its plant, machinery and equipment." We must hold, however, that the annual depreciation taken on the partnership assets was a proper item of operating cost. To hold that because assets are later sold at a gain, the depreciation should not be deducted (and thus plaintiff's share of the annual profits should not be reduced thereby) is contrary to all established rules of accounting. The amount of depreciation taken yearly (which amount was not challenged by plaintiff as being excessive) represented the wear and tear on the plant equipment and machinery which wear and tear, not only in the accounting aspect but in actual fact, diminish the values of the assets. If the assets were later sold at a gain, that fact can not mean the depreciation was excessive; it merely shows that there was a good market. It is to be observed by taking depreciation as an operating cost annually, thus reducing the partnership's taxable income, more funds remained in the partnership to be used in the creation of more profit. It is true that the amount of capital gain is increased by the fact that depreciation was so taken. However, taxwise, it was better to take the depreciation and thus have less operating profit and a higher capital gain, since the latter is taxed at a lower tax rate. There is no reason, therefore, to allow the plaintiff to recover any amount of the depreciation.

The plaintiff seeks to lay emphasis on the fact that the Chancellor used the word "amounts" instead of "accounts" in his quotation from the partnership agreement that "In the event of liquidation, the net worth of this partnership shall be distributable to the parties hereto on the basis of their respective capital *amounts*." This was merely a stenographic error and in no way formed any basis for the Chancellor's decision, as is expressly shown in the Chancellor's letter

to defendant's counsel which appears in the Supplemental Record.

The Chancellor should have prepared formal findings of fact and conclusions of law in compliance with Rule 1517 of the Pennsylvania Rules of Civil Procedure. We do not see, however, what could be gained by our remanding the case for that purpose. The issue as to what percentage of the gain made on the sale of the assets the plaintiff was entitled to was a relatively simple one to be determined by the terms of the agreement. The Opinion clearly sets forth (though not formally) the facts found by the Chancellor and his conclusions of law. In them we find no error. In *Insurance Co. v. Keefer*, 9 Pa. Superior Ct. 186, 189, the Superior Court said: "The decision of the court must be in writing, stating separately and distinctly the facts found, and the conclusions of law. . . . The importance of a strict compliance with its provisions in this regard has been emphatically declared in many cases. . . . We might properly refuse to review the case as it is presented; but passing without further comment the informalities in the proceedings to which we have called attention, we find no error in the conclusions of the court upon the two legal questions arising upon the undisputed facts culled from the pleadings." It is our opinion that the Chancellor properly interpreted the agreement on which the plaintiff bases his claim, and we find also that his conclusions are correct. We discover nothing in the other contentions of the plaintiff which would warrant our reversal of the lower court's decree.

Decree affirmed; costs on appellant.