520 A.2d 480

**Samuel RAPPAPORT, Appellant,**

v.

**Elias H. STEIN & Leon Silverman and Theodore Snyder.**

Superior Court of Pennsylvania.

Argued Sept. 18, 1986.

Filed Jan. 28, 1987.

Jerome J. Verlin, Philadelphia, for appellant.

Stuart H. Savett, Philadelphia, for Stein, appellee.

Jeffrey B. Albert, Philadelphia, for Snyder, appellee.

Before CIRILLO, President Judge, and BECK and JOHNSON, JJ.

BECK, Judge:

This is an appeal from an interlocutory order entered by the court below in the exercise of its broad supervisory powers as a court of equity presiding over the winding up of five dissolved partnerships and one joint tenancy.[1] The order appealed from states:

AND NOW, this 14th day of February, 1986 it is hereby

---

1. The court below has made no distinction in the manner in which it has dealt with the dissolution and winding up of the joint tenancy as opposed to the five partnerships. (R. 12a). This apparently results from the fact that the partners themselves have conducted the joint tenancy in the same manner as the partnerships.

ORDERED

that, commencing on March 17, 1986, Lanard & Axilbund, Inc. shall take all reasonable and appropriate steps to sell the real estate properties of the various partnerships.

Appellant, Samuel Rappaport, one of the partners, contends on appeal that this order (the "February Order") effectively appoints Lanard & Axilbund as the liquidating receiver of the partnerships and is, therefore, appealable as of right under Pennsylvania Rule of Appellate Procedure 311(a)(2). Pa.R.A.P. 311(a)(2). This rule grants an appeal as of right from an interlocutory order

... confirming, modifying or dissolving or refusing to confirm, modify or dissolve an attachment, custodianship, receivership or similar matter affecting the possession or control of property.

*Id.*

■ Assuming the appealability of the February Order, Appellant seeks reversal thereof on the grounds that its entry was procedurally flawed and that no receiver should have been appointed in this case because of the absence of evidence of waste or dissipation of partnerships assets.[2]

Appellees, Elias H. Stein, Leon Silverman and Theodore Snyder, the remaining partners, counter by interpreting the February Order as the appointment of Lanard and Axilbund not as a receiver, but merely as a real estate broker. Appellees contend that interpreting the February Order in this manner mandates the conclusion that it is a non-appealable interlocutory order because it neither constitutes the appointment of a receiver nor involves a matter affecting the possession or control of property.

■ We agree with appellee's construction of the February Order and on that basis decide that it is not appealable. Accordingly, we quash the appeal for lack of jurisdiction.

2. Appellant also challenges his removal as manager of the partnership properties. Since this challenge is really directed to a prior order of the trial court in this matter which is not on appeal before us now, we could not consider this challenge even were we to find that we have jurisdiction over this appeal. *See* footnote 3 *infra.*

We were recently called upon to review an earlier and related order entered by the trial court in the instant action. *Rappaport v. Stein*, 351 Pa.Super. 370, 506 A.2d 393 (1985) (allocatur granted 511 Pa. 334, 513 A.2d 391). In considering this matter, we briefly recited the factual background of this case in a manner that is equally sufficient for purposes of this Opinion. We stated:

> Beginning in 1973, appellant Rappaport entered into a series of partnership agreements with Stein, Silverman and Snyder, appellees, for the purpose of purchasing real estate for investment. Appellant is an experienced real estate investor and property manager; appellees are attorneys and businessmen.
>
> From the beginning, appellant was the moving force behind the real estate activities of all of the partnerships. He negotiated purchases, sales and leases, managed properties, provided for maintenance, restoration and repair of the properties, and advanced large sums of money to operate the enterprises. Appellees failed to make substantial monetary contributions or to participate in management. By 1979, the parties argued over their various roles in the enterprises, and the partnerships were effectively dissolved as of October 1979.
>
> Appellant filed this action to wind up the affairs of the partnerships since the acrimony between the partners prevented an amicable termination. The parties have not yet finished accounting for the dealings of the partnerships and terminating the enterprises.
>
> On January 28, 1985, the trial judge entered an order removing appellant from his de facto position as the manager of all the properties of the partnerships:
>
>> AND NOW, this 28th day of January, 1985, the Court enters an interlocutory Order appointing the firm of Lanard & Axilbund to manage the properties held by the entities involved in this litigation commencing February 1, 1985. Lanard & Axilbund shall have the authority to collect rents, make ordinary repairs, pay taxes, insurance, utility bills and other routine and

ordinary expenses, rent properties as vacancies occur, and perform all the routine and customary functions of a real estate management firm pending further Orders of this Court; provided, however, that Lanard & Axilbund has no authority to sell or encumber the properties, to use assets of the entities for purchase of other properties or to enter into contracts for extensive renovation or alteration of the properties.

This appeal is from this order.

*Id.*, 351 Pa.Superior Ct. at 373–374, 506 A.2d at 395.

As the foregoing indicates, on January 28, 1985, the trial court appointed Lanard & Axilbund to serve as real estate manager for the partnership properties (the "January Order"). In appealing from the January Order, Appellant Rappaport contended that it alone constituted the appointment of a receiver and was, thus, appealable under Rule 311(a)(2). *Id.*, 351 Pa.Superior Ct. at 375, 506 A.2d at 395. This Court quashed the appeal, holding that the January Order only gave Lanard & Axilbund a "limited management function" that was "not the 'possession or control of property' which justifies an exception to the nonappealability of interlocutory orders." *Id.*, 351 Pa.Superior Ct. at 375, 506 A.2d at 395–6.[3]

■ The February Order presently before us admittedly expands the function of Lanard & Axilbund. Unlike the January Order, it directs Lanard & Axilbund to "take all

3. Our Supreme Court has granted allocatur in that case. However, our opinion in that case addressed two consolidated appeals: one from the January Order and one from an unrelated order in another action between these parties. The Supreme Court granted allocatur only as to the second, unrelated matter.

We note additionally that although we have already quashed appellant Rappaport's appeal from the January Order and despite the fact that the January Order is not now on review before us, Appellant's Brief contains numerous attacks on the advisability of *both* the February and January Orders. Indeed, the Conclusion of the Brief expressly requests that both Orders be vacated. We emphasize that only the February Order is presently on appeal and we will address ourselves only to it.

reasonable and appropriate steps to sell" the properties.[4] In contrast, the January Order prohibited Lanard & Axilbund from selling the properties. (R. 131a). Despite this expansion of the powers of Lanard & Axilbund, we do not construe the February Order as the appointment of a receiver. As appellees persuasively argue, the February Order does not specifically appoint Lanard & Axilbund as a receiver, nor was its entry accompanied by the procedural safeguards that the Rules of Civil Procedure provide for the appointment of a receiver. Pa.R.C.P. 1533.

In fact, the February Order merely directs Lanard & Axilbund to *take steps* to sell the property. Since Lanard & Axilbund is in the real estate brokerage business, we assume that the trial court now intends Lanard & Axilbund to do precisely what it would customarily do as to any other property Lanard & Axilbund is involved in selling, i.e. list the property for sale and market the property aggressively. In this instance, the only difference is that Lanard & Axilbund will be acting under the continuing supervision of the court. There is no suggestion in the February Order that Lanard & Axilbund has now been given the power actually to consummate the sale of the properties with no further involvement of the court. Nothing in the February Order indicates that title to the properties is anywhere other than in the partnerships, as it had been prior to entry of the order.

Additionally, we note that the February Order does not enjoin any of the partners themselves from seeking to

---

4. On August 28, 1986, after the filing of this appeal but before argument, the court below entered its Final Revised Opinion in this case. This opinion basically resolves the accounting issues between the parties. Accompanying the opinion is an Order entered August 28, 1986 directing Lanard & Axilbund to "list all partnership properties for sale on October 1, 1986, unless prior thereto to the parties agree to a plan for division of the partnership assets." By Order dated March 10, 1986, the court had stayed the operation of the February Order pending determination of this appeal or further order of the court below. Apparently, the August 28 Order lifts this stay. Presumably to assist us in our disposition of this appeal, counsel provided this Court with copies of the August 28 Opinion and Order at argument. However, since these documents do not form a part of the record in this case, we will not consider them.

market the properties. Our review of the record reveals that no one of the partners has ever functioned as a liquidating partner charged with the sole responsibility and given the exclusive power to sell partnerships properties. Given that fact, after dissolution, all the partners retained the power to take actions necessary to wind up the partnerships' affairs. 59 Pa.Cons.Stat.Ann. §§ 355, 359 (1986); *North Star Coal Co. v. Teodori,* 442 Pa. 583, 586, 277 A.2d 154, 156 (1971). In this case, of course, since the winding up was being conducted under the supervision of the court, such actions would have to be taken under such supervision. In fact, the court below has repeatedly urged the partners to agree on a plan for disposition of the properties or to present to the court any offers for the purchase of the properties they can secure. (R. 9a, 88a, 130a, 137a). We do not read the Court's one-line February Order as having impliedly divested the partners of these rights.

In contrast, if indeed the court intended to appoint a liquidating receiver to dispose of the properties and had specifically directed the receiver to sell them (or if at any time in the future the court below decides that such an appointment and order would be appropriate), the receiver would expressly be given the actual power to consummate the sales of the partnership properties and the partners themselves would retain no control or possession thereof. As the Supreme Court noted in *Wood v. Wood,* 312 Pa. 374, 167 A. 600 (1933), for purposes of winding up a partnership, the partnership continues with title in either the liquidating partner or, in a case where a liquidating receiver has been appointed, in the receiver. *Id.,* 312 Pa. at 380, 167 A. at 602.

██ The hallmark of any receivership, whether designed to permit the continuation and rehabilitation of an ongoing business or to liquidate a dissolved business, is the removal of all possession and control from the owners of the business and the transfer thereof to the receiver, who acts as the officer of the appointing court. *Warner v. Conn,* 347 Pa. 617, 619, 32 A.2d 740, 741 (1943); *Shipler v.*

*New Castle Paper Products Corp.*, 293 Pa. 412, 143 A. 182 (1928); *Commonwealth ex rel. Appellant v. Overholt*, 23 Pa.Super. 199 (1903). The receiver may be ordered by the appointing court to sell the properties of the business of which the receiver has possession and, in that event, the sale is deemed to be a judicial sale. *Bogosian v. Foerderer Tract Committee, Inc.*, 264 Pa.Super. 84, 96, 399 A.2d 408, 414 (1979).

Because of the foregoing divestiture of control and possession that results from the appointment of a receiver, our rules of civil procedure governing actions in equity, including partnership dissolution actions, impose stringent requirements on receivers and on courts appointing them. Pa.R.C.P. 1533. These safeguards are obviously designed to protect the owners of the business, for whose ultimate benefit the receiver acts.

Here, there was no need to impose these requirements on Lanard & Axilbund or to protect the partners from a possible breach of duty by Lanard & Axilbund because they have no power to act in a way that would harm the partners. As we interpret the February Order, no sale can be consummated without court approval and presumably all the partners would have a right to object to any such sale. Moreover, the partners themselves each retain the right to market the properties and present prospective buyers to the court.

■ Having established that Lanard & Axilbund is not a receiver, and that the February order is not appealable on that ground, we now turn to the alternative, catch-all provision of Rule 311(a)(2) which makes appealable certain orders "affecting the possession or control of property." We find this portion of the rule equally inapplicable to the February Order.

Given our interpretation of the order set forth above, neither the partners' possession or control of the partnership properties has been affected by the entry of the order. Of course, the partners' possession and control of their properties has already been affected by the dissolution of

the partnerships and the winding up process conducted under the supervision of the court. However, the February Order standing alone does not affect that possession and control. Lanard & Axilbund's exercise of its new power to act as broker with regard to the properties alone does not disturb the degree of possession and control the partners had retained prior to the entry of the February Order.

Appellant contends that since the February Order directs the sale of the properties, even excluding consideration of the role of Lanard & Axilbund, it affects the partners' possession and control. We disagree. The order only directs Lanard & Axilbund to take steps; i.e. to attempt to market the properties. It does not approve any specific sale over the objection of any partner. It does not preclude the partners coming to any agreement among themselves as to any other disposition of the partnership properties which they could submit for the approval of the court. Of course, as we have recently stated, both "[t]he language of the *Uniform Partnership Act*, 59 Pa.C.S.A.Sec. 360(a) and the general rule favors a liquidation and cash distribution in the absence of an agreement to do otherwise." *Hankin v. Hankin*, 302 Pa.Super. 295, 300, 448 A.2d 1049, 1051 (1981). But the February Order standing alone does not make a final determination as to the ultimate disposition of the properties, nor does it actually order the sale of anything.

Although we have found it extremely difficult to divine precisely what the trial court intended by the entry of the February Order, largely because the Order itself is made in summary language and the accompanying Opinion of the trial court is not sufficiently detailed, we find that the February Order represents merely the appointment of Lanard & Axilbund as a broker to assist in the winding up of the subject partnerships. As such, it constitutes an exercise of the court's broad supervisory powers over the winding up of a partnership. *See Hankin v. Hankin*, 319 Pa.Super. 147, 465 A.2d 1272 (1983), *rev'd in part on oth. grds.*, 507 Pa. 603, 493 A.2d 675 (1985). The order does not

334

constitute the appointment of a receiver nor does it presently affect the possession or control of the properties.

We quash the appeal for lack of jurisdiction.