# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Concerned Owners of Homes in      :
London Towne Homeowners        :
Association                      :
              v.            :
                        :
London Towne Homeowners        : No. 772 C.D. 2020
Association and Bennett Carlise    : Argued: May 10, 2021
                        :
              v.            :
                        :
Matthew Serota,              :
               Appellant    :


**BEFORE:**    **HONORABLE RENÉE COHN JUBELIRER,** Judge
                  **HONORABLE MARY HANNAH LEAVITT,** Judge
                  **HONORABLE BONNIE BRIGANCE LEADBETTER,** Senior Judge


**<u>OPINION NOT REPORTED</u>**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**             **FILED: July 7, 2021**

       Matthew Serota (Serota) appeals from the July 2, 2020 Order of the Court of Common Pleas of Allegheny County (trial court) that denied Serota's Second Amended Preliminary Objections to a Petition to Appoint Receiver (Second Amended POs) and Preliminary Objections to a Complaint in Support of Petition to Appoint a Receiver Also Seeking Dissolution of Association and Appointment of Permanent Receiver for Winding Up Association (POs to the Complaint) (together,

Preliminary Objections).[1]  The Petition to Appoint Receiver (Petition) and Complaint in Support of Petition to Appoint a Receiver Also Seeking Dissolution of Association and Appointment of Permanent Receiver for Winding Up Association (Complaint) were filed by the "Concerned Owners of Homes in London Towne Homeowners Association" (Concerned Owners).  Concerned Owners are unit owners in the London Towne Community of Homes (Community) who seek to dissolve the London Towne Homeowners Association (Association) on the basis that it has ceased to function effectively in light of dysfunction within the Community. Also before the Court is Concerned Owners' Application to Quash (Application), which asserts that Serota's appeal should be quashed because the July 2, 2020 Order is an interlocutory order that is not immediately appealable by either right or permission.  For the following reasons, we conclude that the trial court's July 2, 2020 Order is interlocutory and not appealable as of right pursuant to Pennsylvania Rule of Appellate Procedure 311(a)(2), Pa.R.A.P. 311(a)(2); we therefore grant the Application and quash Serota's appeal.

## I.  BACKGROUND

This matter represents the most recent dispute between two factions of unit owners in the Community that has resulted in near-constant litigation between and amongst unit owners, the Association, and Serota since 2015.[2]  The Association

---

[1] The trial court also overruled the preliminary objections of the London Towne Homeowners Association.

[2] This litigation includes actions filed by Serota against the Association in or around 2015 following the Association's October 2014 amendment to the Declaration of Covenants, Conditions, and Restrictions to change a one-unit, one-vote provision to a one vote per owner provision that would limit an owner of multiple units to a single vote in Association matters.  Serota prevailed in this litigation, *see Serota v. London-Towne Homeowners Association* (Pa. Cmwlth., No. 2073 C.D. 2016, filed April 27, 2017) (*Serota I*).  *Serota I* begat *Serota v. London-Towne* **(Footnote continued on next page…)**

2

governs the Community via the Declaration of Covenants, Conditions, and Restrictions (Declaration), recorded on June 26, 1979, and the Bylaws of the Association (Bylaws). The Community is a planned community of 70 townhomes of which Serota owns 22. Serota does not reside in the Community. At the time of the Petition and Complaint, Bennett Carlise (Carlise) was acting as the President of the Association's Executive Board (Board) and, for a period of time, served as the only member of the Board. Some members of Concerned Owners were past Board members. Although they were not specifically named in the Petition, the individual owners signed the verification at the end of the Petition and, later, were specifically identified in the Complaint.

On March 27, 2019, Concerned Owners filed the Petition[3] setting forth a claim for breach of fiduciary duty against Carlise (Count I) and a request for the appointment of a receiver and the dissolution of the Association (Count II) based on the following averments. Carlise was appointed to the Board on October 1, 2017, making him the second Board member. Following the death of the other Board member in May 2018, Carlise was the sole Board member until he appointed two other members in June 2018, who ultimately resigned in October 2018. Concerned Owners' claims are based on Carlise's: attempt to impose, in their view, an improper special assessment; refusal to hold special meetings when requested and spending

---

*Homeowners Association* (Pa. Cmwlth., No. 1451 C.D. 2017, filed November 16, 2018) (*Serota II*), which involved Serota's attempt to have the Association and/or its officers pay his attorney's fees arising from *Serota I*. The trial court did not grant Serota's requested relief, and we affirmed. In 2015, the Association's then-Executive Board attempted to enact various amendments and changes to the Association's Bylaws limiting the rental of units and occupancy of units by non-owners. Serota again sued the Association, and a counter-suit was filed against Serota. This litigation was resolved by a court-approved Limited Settlement and Release Agreement that enjoined the restrictions and set certain limitations to the Association's imposing future assessments against Serota.

[3] The Petition may be found at pages 9a-101a of the Reproduced Record.

Association funds on legal fees to determine the validity of such requests; refusal to abide by the Bylaws' requirements regarding the holding of timely special meetings and allowing for unit owners' review and rejection of the Association's budget; and refusal to abide by what they believe to have been valid votes regarding the dissolution of the Association, the removal of Board members, and the cancellation of an insurance policy that they believed was too expensive and improperly excluded claims filed by Serota. They also questioned Carlise's authority to act for the Association, particularly after a majority of unit owners voted for his removal from the Board, and his continued expenditure of Association funds on legal fees to fight his removal from office. Concerned Owners also asserted that, because the Bylaws require the signature of two officers on checks over $100, Carlise was improperly issuing checks with only his signature. According to Concerned Owners, Carlise justified his remaining on the Board by asserting that Section 5303(f) of the Uniform Planned Community Act (UPCA), 68 Pa.C.S. § 5303(f), required a 66% vote in favor of his removal, which was not obtained. Concerned Owners believed that this section did not apply because the Community was created in 1979. (Petition ¶¶ 52-66.) Concerned Owners contended that, following a September 5, 2018 vote that removed all of the Board members, the Board has been without the authority to act.

Based on their concerns regarding the alleged mismanagement of the Association and the lack of progress on the dissolution of the Association, Concerned Owners filed the Petition "against Carlise to protect the majority interests of the Association," not just those of Carlise. (*Id.* ¶ 73, R.R. at 19a.) Concerned Owners asserted that Carlise "has failed to fulfill any of the duties set forth in the Bylaws to ensure the business of the Association was completed," "is unable and unauthorized to effectively manage the business of the Association," and "has

breached his duties in that he has failed to act in the best interest of the Association . . . ." (*Id.* ¶¶ 81-83, 85, 87.) They further argued, in support of their request for the appointment of a receiver, that the current structure of the Association is not sustainable because "[t]here is dissension and impasse among and between Carlise and many [C]ommunity unit owners as to the winding up of the" Association's affairs, they were "unaware what, if any, assets and income of the Association [were] being disbursed and why," and there had been no information as to the Association's fiscal affairs provided to Concerned Owners since September 26, 2018. (*Id.* ¶¶ 74, 90-92.) Concerned Owners asserted that "[t]he balance of necessity and benefits against injury incident to the appointment of a receiver requires such an appointment," and they requested an accounting of the Association's funds. (*Id.* ¶¶ 94-96.) Based on these facts, Concerned Owners maintained that they had met the standard for the appointment of a receiver under Pennsylvania law, which requires a showing of "gross mismanagement or fraud or similar circumstances." (*Id.* ¶ 97 (quoting *Tate v. Phila. Transp. Co.*, 190 A.2d 316, 321 (Pa. 1963)).)

The trial court heard argument on July 18, 2019, at which the parties and Serota, who was allowed to intervene, presented their positions regarding how to proceed. By order dated the same day, the trial court appointed Robert G. Xides, Jr., Esq. (Xides) "to serve as temporary receiver" and required Xides to "file a Report and Recommendations . . . within 45 days." (Supplemental Reproduced Record at 2b.) The trial court empowered Xides "to collect assessments and make disbursements within the regular course of business" and directed him to hold at least one meeting with the unit owners so that he could "adequately assess their concerns and make recommendation in that regard." (*Id.*) No immediate appeal of the July 18, 2019 order was filed.

5

After holding two unit owner meetings and reviewing the Association's finances, Xides issued a report and recommendation (Report) on September 13, 2019.[4]  In the Report, Xides described the Association as being "in a state of turmoil for at least the last five . . . years," and that its continuation was "a burden rather than a benefit to the [C]ommunity."  (Reproduced Record (R.R.) at 108a, 120a.)  Xides set forth:  the general state of the Association and Community; the concerns of the two factions; recommendations as to legal issues regarding the validity of the various votes and actions set forth in the Petition, particularly those occurring when there were fewer than five Board members and after the September 5, 2018 vote removing the Board members; and a recommendation to suspend the Association's regular activities, as dissolution did not appear to be legally possible.  As to Carlise's expenditure of Association funds, Xides believed those expenditures benefited the Association.[5]  (*Id.* at 119a-20a.)

On December 10, 2019, the trial court issued an order empowering Xides to continue to conduct the Association's business, including "levying and collecting assessments, making contracts for necessary services, and paying [the] obligations of the Association as [he] in his discretion determine[s]."  (Original Record (O.R.) at Item 26.)  By orders dated December 10, 2019, and January 23, 2020, the trial

---

[4] The Report may be found at pages 102a-22a of the Reproduced Record.

[5] Various exceptions and objections to the Report, and responses thereto, were filed between September 25, 2019, and February 2020.  (Original Record (O.R.) at Items 14, 20-21, 41, 43-44.)  In addition, both Serota and the Association/Carlise have filed various applications for special relief related to Xides' appointment and motions to vacate or strike the appointment between September 26, 2019, and January 2020, to which Concerned Owners replied.  (O.R. at Items 13, 15, 18, 38-39, 46-47.)  It appears that hearings on the motions and applications have occurred, but it is unclear from the trial court's record that has been filed with the Court if any orders have been issued to resolve them.

court directed that the Association pay Xides' law firm for Xides' services. (O.R. at Item 27.) No appeals were filed from these orders.

On January 3, 2020, Concerned Owners filed the Complaint, asserting the same facts as in the Petition, as well as information from the Report, and new allegations regarding actions taken by or attempted to be taken by Carlise and Serota after the appointment of Xides. As in the Petition, they asserted a breach of fiduciary duty claim against Carlise (Count I), sought the court-ordered dissolution of the Association (Count II), and requested the appointment of a permanent receiver to wind up the Association (Count III).

On January 24, 2020, Serota filed the POs to the Complaint,[6] and a day later, filed the Second Amended POs.[7] Together, the Preliminary Objections challenged: the capacity of "Concerned Owners" to sue as it is not a legal entity that can sue, be sued, or assume liability to pay for any receiver; the legal sufficiency of Concerned Owners' claim for the appointment of a permanent receiver under *Tate* and *Bowman v. Gum, Inc.* 184 A. 258 (Pa. 1936), particularly after Xides' Report; the legal sufficiency of Concerned Owners' assertions that the UPCA did not apply to the Community and that the Association could be dissolved under the trial court's equitable power, particularly after Xides' Report; and the legal sufficiency of Concerned Owners' request for an appointed receiver to dissolve the Association, which would be an illegal action in light of the UPCA, the Declaration, and this Court's prior opinion in *Serota v. London-Towne Homeowners Association* (Pa. Cmwlth., No. 2073 C.D. 2016, filed Apr. 27, 2017) (*Serota I*). Specific to the

---

[6] The POs to the Complaint may be found at pages 362a-76a of the Reproduced Record. The Association and Carlise also filed preliminary objections to the Complaint.

[7] Serota filed an initial set of preliminary objections to the Petition on September 3, 2019, and amended preliminary objections on October 1, 2019. The Second Amended POs may be found at pages 328a-41a of the Reproduced Record.

Petition, Serota claimed it was improperly filed because it was not related to an existing complaint as required by Pennsylvania Rule of Civil Procedure 1007, Pa.R.C.P. No. 1007, and *Wm. Garlick & Sons, Inc. v. Lambert*, 287 A.2d 143 (Pa. 1972). Specific to the Complaint, Serota asserted that Counts II and III, seeking, respectively, dissolution and appointment of a permanent receiver, are not valid causes of action that can be granted and are without legal bases due to the equitable relief requested, and that Count III is moot without Count II.[8]

Concerned Owners filed a single response to the Preliminary Objections, explaining why each was without merit at this stage of the proceedings.[9] They asserted: there was no legal deficiency in using "Concerned Owners" where the individual owners, who were identified, clearly had standing; the Petition, itself, met the requirements for a complaint; they met the legal standards for the appointment of the receiver, as supported by their pleadings and Xides' Report; and they were not seeking the dissolution of the Community but of the Association. Concerned Owners reiterated their arguments as to the inapplicability of the UPCA to the Community, and that the trial court has broad equitable power and, therefore, their Counts based in equity are valid.

The trial court heard argument by the parties on June 17, 2020. There was discussion about holding a hearing, but the trial court ultimately limited it to argument on any motions that could be argued. (R.R. at 419a.) Serota presented argument in support of his Preliminary Objections, followed by Concerned Owners'

---

[8] Serota requested in the Second Amended POs that the Petition be dismissed with prejudice, that the appointment of a temporary receiver be discontinued or vacated, and that the individual plaintiffs pay Xides' costs and pay the Association's attorneys' fees and expenses. He requested in the POs to the Complaint that the Complaint be dismissed and that the "true" plaintiffs be declared jointly and severally subject to counterclaims and other legal actions.

[9] Concerned Owners' response may be found at pages 394a-405a of the Reproduced Record.

8

argument in opposition. (*Id.* at 419a-52a.) Following extensive argument, the trial court denied the Preliminary Objections, noting the matter had been going on for a year without much progress and the trial court wanted to move towards disposing of the matter.[10] (*Id.* at 424a, 452a.) As to other motions and applications for special relief that sought the removal of Xides, the trial court indicated there would have to be a hearing, which would be scheduled for another time.[11] (*Id.* at 467a-68a.) On July 2, 2020, the trial court issued the Order overruling Serota's Preliminary Objections.

Serota filed a Notice of Appeal from the July 2, 2020 Order, and the trial court directed him to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Pennsylvania Appellate Procedure 1925(b), Pa.R.A.P. 1925(b) (1925(b) Statement). On August 1, 2020, Serota filed an application requesting that the trial court amend the July 2, 2020 Order to include a statement that the Order "involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance to ultimate termination of the matter" pursuant to Section 702(b) of the Judicial Code, 42 Pa.C.S. § 702(b), so that "Serota may file a petition for permission [to] appeal from [the] Order" pursuant to Pennsylvania Rule of Appellate Procedure 1311, Pa.R.A.P. 1311 (addressing interlocutory appeals by permission). (Application to Amend Order to Include Statement Specified in 42

---

[10] The Association and Carlise also presented argument on their preliminary objections specific to the allegations against Carlise and the dissolution of the Association, followed by Concerned Owners' counter arguments. (R.R. at 453a-63a.) The trial court overruled those preliminary objections as well. (*Id.* at 466a.)

[11] The trial court issued an order docketed July 14, 2020, directing the Association to pay Xides' fees. Serota appealed this order to our Court, which was docketed at 797 C.D. 2020. However, Serota subsequently withdrew this appeal.

Pa.C.S. § 702(b) ¶¶ 3-4.)  The trial court denied Serota's request by order dated August 4, 2020.

Thereafter, Serota timely filed two nearly identical 1925(b) Statements, one for each set of preliminary objections denied, setting forth the alleged errors committed by the trial court.[12]  The trial court issued its 1925(a) Opinion.  After setting forth the facts as alleged and the errors asserted by Serota, the trial court explained it would not address the issues' merits because, as a matter of procedure, the appeal was invalid because the July 2, 2020 Order was interlocutory.  The trial court indicated that the appeal should be quashed pursuant to Pennsylvania Rule of Appellate Procedure 341, Pa.R.A.P. 341, which allows for appeals only from final orders.  The trial court indicated that the July 2, 2020 Order was not appealable by permission under Rule 1311 because the trial court had denied Serota's application to include the statement specified under Section 702(b) of the Judicial Code.  As the July 2, 2020 Order was not final and Serota did not have permission to appeal from the interlocutory order, the trial court stated that this Court did not have jurisdiction and Serota's appeal should be quashed.

## II. DISCUSSION

We must first resolve the threshold issue of whether the Court has jurisdiction to consider the July 2, 2020 Order.  Pursuant to Rule 341, this "Court has appellate jurisdiction over 'final orders' of the administrative agencies or courts of common pleas." *Rivera v. Carbon Cnty. Tax Claim Bureau*, 857 A.2d 208, 212 (Pa. Cmwlth. 2004).  A final order is any order that "disposes of all claims and of all parties" or that "is entered as a final order pursuant to paragraph (c) of this rule."  Pa.R.A.P.

---

[12] Serota's 1925(b) Statements may be found at pages 495a-512a of the Reproduced Record.

10

341(b). "The purpose of limiting appellate review to final orders is to prevent piecemeal determinations and the consequent protraction of litigation." *Rivera*, 857 A.2d at 212. Generally, an order overruling preliminary objections is interlocutory and not subject to immediate appeal. *Maxatawny Township v. Kutztown Borough*, 113 A.3d 895, 899 n.4 (Pa. Cmwlth. 2015). Orders that are collateral or interlocutory, which do not qualify as final orders, may be immediately appealed in certain circumstances. Appeals from interlocutory orders may be taken by permission under Pennsylvania Rules of Appellate Procedure 312 and 1311, Pa.R.A.P. 312, 1311.[13] However, an appeal **as of right** may be taken from certain interlocutory orders pursuant to Rule 311(a).

---

[13] Rule 312 states that interlocutory orders may be appealed in accordance with Chapter 13 of the Appellate Rules. Pa.R.A.P. 312. Rule 1311 provides, in relevant part, that:

**(a)** **General rule.--**An appeal may be taken by permission from an interlocutory order:

(1) certified under 42 Pa.C.S. § 702(b) or for which certification pursuant to 42 Pa.C.S. § 702(b) was denied; *see* Pa.R.A.P. 312;

(2) for which certification pursuant to Pa.R.A.P. 341(c) was denied; or

(3) that determined that a defendant's motion to dismiss on the basis of double jeopardy is frivolous.

**(b) Petition for permission to appeal.--**Permission to appeal from an interlocutory order listed in paragraph (a) may be sought by filing a petition for permission to appeal with the prothonotary of the appellate court within 30 days after entry of such order or the date of deemed denial in the trial court or other government unit with proof of service on all other parties to the matter in the trial court or other government unit and on the government unit or clerk of the trial court, who shall file the petition of record in such trial court. . . .

Pa.R.A.P. 1311(a), (b).

11

This Court, by order dated October 6, 2020, directed the parties to address the issue of the appealability of the July 2, 2020 Order in their briefs. The parties have done so,[14] and, in addition, Concerned Owners filed their Application. Concerned Owners maintain that Serota's appeal should be quashed because the July 2, 2020 Order was an interlocutory order that is not immediately appealable either by right or by permission. Serota does not argue that he may appeal the July 2, 2020 Order by permission. Rather, he now asserts that the Order is appealable as of right pursuant to Rule 311(a)(2), which authorizes immediate appeals from orders "confirming, modifying or dissolving or refusing to confirm, modify or dissolve an attachment, custodianship, receivership or similar matter affecting the possession or control of property, except for orders pursuant to" certain sections of the Divorce Code, 23 Pa.C.S. §§ 3101-3904. Pa.R.A.P. 311(a)(2). Serota did not raise Rule 311(a)(2) as a basis for this Court's jurisdiction before the trial court, but cited it for the first time in his Docketing Statement filed with the Court on October 4, 2020. It is undisputed that the July 2, 2020 Order is not a final order as defined by Rule 341(b) and is not appealable by permission in light of the denial of the Section 702(b) amendment. Thus, for the July 2, 2020 Order to be immediately appealable, it must fall within Rule 311(a)(2).

Concerned Owners challenge Serota's reliance on Rule 311(a)(2), arguing that Serota acknowledged the interlocutory nature of the July 2, 2020 Order and the need to obtain permission to appeal, by asking for the trial court to grant that permission by amending the July 2, 2020 Order. (Concerned Owners' Brief (Br.) at 4-5.) Concerned Owners assert that Rule 311(a)(2), which courts apply narrowly, does not apply to the July 2, 2020 Order based on the Rule's plain language and

---

[14] Carlise joins in Serota's briefs, and the Association and Xides did not file a brief.

related case law. (*Id.* at 1-2 (citing *Borough of Ambler v. Regenbogen*, 713 A.2d 145, 149 (Pa. Cmwlth. 1998); *Jerry Davis, Inc. v. Nufab Corp.*, 677 A.2d 1256, 1259 (Pa. Super. 1996);[15] *Rappaport v. Stein*, 506 A.2d 393, 395-96 (Pa. Super. 1985) (*Rappaport I*)).) Concerned Owners contend that the July 2, 2020 Order merely overrules the Preliminary Objections and does not alter the possession or control of property or "specifically confirm, modify, dissolve or refuse to confirm, modify, or dissolve a receivership, attachment, [or] custodianship . . . ." (*Id.* at 2.) They argue that, notwithstanding Xides' title, his role to assess and report on the Association's condition and manage the Association while the case is pending is a limited management function and does not constitute the possession or control of the property, particularly where the title of the properties remain with the owners. (*Id.* at 2-3 (citing *Rappaport I*, 506 A.2d at 395-96; *Rappaport v. Stein*, 520 A.2d 480, 482-83 (Pa. Super. 1987) (*Rappaport II*)).) They note that Serota did not appeal the trial court's July 18, 2019 order appointing Xides or the December 10, 2019 order clarifying Xides' authority, yet is now trying to "morph" the July 2, 2020 Order denying the Preliminary Objections into something it is not, which does not reflect a narrow construction of Rule 311(a)(2). (*Id.* at 3.)

Serota argues that the July 2, 2020 Order is immediately appealable under Rule 311(a)(2) because the matter involves a receivership. According to Serota, he did not have to obtain the trial court's permission pursuant to Section 702(b) and Rule 1311(b) because Rule 311(a)(2) allows him to immediately appeal the Order as of right. (Serota's Br. in Opposition at 8 (citing *Jerry Davis, Inc.*, 677 A.2d at 1259 (applying Rule 311(a)(2) to "[o]rders involving . . . receiverships . . . or other

---

[15] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 551 (Pa. Cmwlth. 2018).

13

similar matters affecting the possession or control of property")).) Serota relies on the request in his Second Amended POs[16] for the vacation and discontinuance of the receivership sought by Concerned Owners to argue that the July 2, 2020 Order effectively confirmed the receivership and "transferred control from the unit owners and members . . . of the . . . Association . . . and their elected executive board . . . to a receiver to govern and conduct the business of the Association." (Serota's Br. in Opposition at 3-4; *see also* Serota's Reply Br. at 2-3.) Thus, he argues this matter is akin to *White v. White* (Pa. Super., No. 846 MDA 2017, filed February 8, 2018), 2018 WL 771850, and *Interstate Net Bank v. Donna Jane Apartments Associates, L.P.* (Pa. Super., No. 515 EDA 2013, filed May 9, 2014), 2014 WL 10920475, wherein the Superior Court held that there was an immediate right to appeal under Rule 311(a)(2) under similar circumstances. (Serota's Br. in Opposition at 8-9; *see also* Serota's Reply Br. at 3-4.) Contrary to Concerned Owners' arguments, Serota maintains that Xides is not merely managing the Association but is exercising unilateral control over things that affect the unit owners' property rights. (Serota's Br. in Opposition at 10; *see also* Serota's Reply Br. at 5-6.) Finally, Serota asserts that any concern regarding piecemeal litigation is misplaced because Rule 311(a)(2) specifically authorizes immediate appeals from these types of interlocutory orders in these limited circumstances. (Serota's Br. in Opposition at 11-12.)

For the July 2, 2020 Order to be appealable as of right, and for this Court to have jurisdiction, it must come within Rule 311(1)(2). Rule 311(a)(2) states that "[a]n appeal may be taken as of right and without reference to Pa.[]R.A.P. 341(c) from:" "(2) *Attachments, etc.* – An order **confirming, modifying, dissolving**, or

---

[16] Although Serota claims this relief was also requested in the POs to the Complaint, a review of that document reveals that such relief was not requested therein. (*Compare* R.R. at 340a-41a, *with* 374a-75a.)

14

**refusing to confirm, modify or dissolve** an attachment, custodianship, **receivership**, or similar matter **affecting the possession or control of property**, except for orders pursuant to 23 Pa.C.S. §§ 3323(f), 3505" (relating, respectively, to the issuance of injunctions and the disposition of property under the Divorce Code). Pa.R.A.P. 311(a)(2) (bold emphasis added). We recognize that "the right to appeal interlocutory orders has been narrowly circumscribed." *Jerry Davis, Inc.*, 677 A.2d at 1258. Moreover, in construing the rules promulgated by our Supreme Court, we use the rules of statutory construction with the object being to ascertain and effectuate the intention of the Supreme Court. Pennsylvania Rule of Appellate Procedure 107, Pa.R.A.P. 107; *Jerry Davis, Inc.*, 677 A.2d at 1258. It is presumed that there was no intent to create "a result that is absurd, impossible of execution[,] or unreasonable." Section 1922(1) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(1).

In *Jerry Davis, Inc.*, the Superior Court interpreted Rule 311(a)(2) to determine whether it applied to the denial of the issuance of a writ of seizure relating to a replevin action. 677 A.2d at 1256-57. The plaintiff appealed, and the parties argued that the order was appealable under Rule 311(a)(2). The Superior Court disagreed, holding, based on the Rule's plain language, that **only** "[o]rders involving attachments, receiverships, custodianships or other similar matters affecting the possession or control of property, are among the classes of interlocutory orders that are appealable as of right." *Id.* at 1259. Because an action in replevin is distinct from the types of legal actions and remedies set forth in Rule 311(a)(2), the Superior Court concluded that the Supreme Court did not intend orders related to a replevin action to be immediately appealable under Rule 311(a)(2). *Id.* at 1259-60.

Serota contends that the Superior Court's use of the word "involving" in *Jerry Davis, Inc.* means that **any** order in litigation **relating** to a receivership is appealable as of right under Rule 311(a)(2). Under that rationale, Serota contends that the July 2, 2020 Order is appealable as of right because it, in effect, confirmed Xides' appointment by denying the Preliminary Objections and allowing the matter to proceed. We do not read *Jerry Davis, Inc.* this broadly, nor do we believe it supports Serota's arguments. *Jerry Davis, Inc.* **rejected** an attempt to extend Rule 311(a)(2) beyond its plain language, in that case to a seizure related to a replevin action. Here, similarly, the Order simply denies the Preliminary Objections, thereby allowing the underlying litigation on, among other things, the appointment of a receiver, to proceed. Thus, *Jerry Davis, Inc.*, which is an example of how "the right to appeal interlocutory orders has been **narrowly** circumscribed," 677 A.2d at 1258 (emphasis added), does not support Serota's broad reading of Rule 311(a)(2) as allowing an immediate appeal from an order that does not fall within its plain language.

Serota relies on *White* and *Interstate Net Bank* to argue that the July 2, 2020 Order is immediately appealable under Rule 311(a)(2). However, those cases are distinguishable because, respectively, they involved appeals from orders **specifically** addressing petitions to modify/remove an appointed receiver or to appoint a receiver in the first instance. *White*, slip op. at 2-3, 9, 2018 WL 771850, at *1, 4 (finding an order denying a joint petition "seeking . . . the removal of [the appointed] guardian/receiver" was immediately appealable because it "constitute[d] an order refusing to modify a receivership"); *Interstate Net Bank*, slip op. at 2-4, 2014 WL 10920475, at *1-2 & n.2 (holding that an order appointing a temporary receiver during the pendency of a foreclosure action was "immediately appealable pursuant to [Rule] 311(a)(2), notwithstanding that the underlying action has not yet

16

been resolved").[17]  As the July 2, 2020 Order overruling the Preliminary Objections did not appoint, modify, or dissolve a receivership, or refuse to do any of those things, these cases do not support Serota's arguments.

Finally, Serota argues that the Order should be immediately appealable because he included a request for the dissolution of Xides' appointment in the Second Amended POs, based on Serota's contention that Xides is exercising unilateral control over things that affect the unit owners' property rights.  This argument seems to invoke the last provision of Rule 311(a)(2), providing that orders that "affect[] the possession or control of property" are immediately appealable.  Pa.R.A.P. 311(a)(2).  However, the types of limited management functions that Xides performs are similar to those in *Rappaport I* and *Rappaport II*, which the Superior Court found do **not** constitute possession or control of property.

In *Rappaport I* and *Rappaport II*, the Superior Court addressed whether orders appointing a real estate firm to manage and later to take steps to sell investment properties during litigation over the dissolution of real estate partnerships were immediately appealable under Rule 311(a)(2).  Relevantly, in *Rappaport I*, the order authorized the real estate firm to "collect rents, make ordinary repairs, pay taxes, insurance, utility bills and other routine and ordinary expenses," to "rent properties as vacancies occur," and to "perform all the routine and customary functions of a real estate management firm pending further [o]rders of th[e] court."  506 A.2d at 395.  The Superior Court held that the real estate firm was performing "routine management functions" and that such "limited management function" was "not the

---

[17] We also note that both *White* and *Interstate Net Bank* are unreported opinions filed before May 1, 2019, and, therefore, may not be cited as persuasive authority.  *See* Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b) (stating that unpublished decisions of the Superior Court filed after May 1, 2019, may be cited as persuasive authority).

'possession or control of property'" that would "justif[y] an exception to the nonappealability of interlocutory orders." *Id.* at 395-96. It therefore quashed the appeal, concluding that the order did not satisfy Rule 311(a)(2)'s jurisdictional requirement. Similarly, in *Rappaport II*, the order directed the real estate management firm to "take all reasonable and appropriate steps to sell the real estate properties of the various partnerships." 520 A.2d at 481. The Superior Court again quashed the appeal, reasoning that although the order expanded the firm's function, it did not specifically appoint the firm as a receiver or give the firm "the power actually to consummate the sale of the properties" that would divest the partnerships' title to the properties. *Id.* at 483.

The parties agree that Xides is collecting assessments, reviewing and paying bills associated with services provided to the Community, and issuing certificates of resale, which are similar to the routine or limited management functions found not to "justif[y] an exception to the nonappealability of interlocutory orders." 506 A.2d at 395-96. Importantly, there does not appear to be any allegation that, beyond collecting assessments from unit owners to pay for services, Xides has the authority, or has even attempted, to divest unit owners of their title to any property. Accordingly, *Rappaport I* and *Rappaport II* support the conclusion that the July 2, 2020 Order is not immediately appealable under Rule 311(a)(2).[18]

---

[18] Although we conclude that the July 2, 2020 Order is not immediately appealable, we note the complicated procedural background of this case, with the near constant filing of pleadings, objections, exceptions, and motions or applications for special relief, along with numerous arguments and hearings. Notably, notwithstanding Serota's and Carlise's objections to Xides' appointment and actions, neither directly challenged that appointment in July 2019 or in December 2019, when the trial court clarified Xides' authority. This allowed Xides to act for more than a year before Serota appealed the July 2, 2020 Order denying POs and allowing the matter to move forward, to this Court. Ultimately, the Court hopes that this contentious matter can be resolved without further delay.

### III. CONCLUSION

Ultimately, the plain language of Rule 311(a)(2) and the case law do not support Serota's argument that the July 2, 2020 Order is immediately appealable. Because the Order is not immediately appealable under Rule 311(a)(2), this Court lacks jurisdiction to consider Serota's appeal. Accordingly, we grant the Application and quash Serota's appeal.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Concerned Owners of Homes in : 
London Towne Homeowners : 
Association : 
              v. : 
  : 
London Towne Homeowners :   No. 772 C.D. 2020
Association and Bennett Carlise : 
  : 
              v. : 
  : 
Matthew Serota, : 
             Appellant : 

## **O R D E R**


    **NOW**, July 7, 2021, the Application to Quash filed by Concerned Owners of Homes in London Towne Homeowners Association is **GRANTED**, and the appeal filed by Matthew Serota is **QUASHED**.


 

_____

**RENÉE COHN JUBELIRER,** Judge